UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-21203-CIV-COOKE/GOODMAN

MARIA MCSWAIN,

      Plaintiff,

v.

WORLD FUEL SERVICES CORP.,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON DEFENDANT'S *DAUBERT* MOTION

Defendant World Fuel Services Corp. seeks to completely prohibit Plaintiff Maria McSwain's expert economist from testifying at trial. World Fuel argues that the expert, Erick C. West, whose resume reflects ample credentials and retentions as an expert for both plaintiffs and defendants, has made too many unfounded assumptions in his analysis.

But economists like West, who provide expert opinions about lost wages and benefits sustained due to the conduct alleged in the Complaint, *frequently* make at least some factual assumptions. If the assumptions are all flat-out incorrect, then the Court can exclude the testimony. If the assumptions are partially incorrect, then those issues can be probed on cross-examination, and the jury will consider what weight, if any, to give to the opinions. And if the assumptions turn out to be all accurate and based on record

evidence, then the other side is free to retain a competing expert and the jury will evaluate the expert opinion or opinions and decide which ones are persuasive.

Because there is some record evidence to support West's assumptions, the Undersigned **respectfully recommends** that United States District Judge Marcia G. Cooke **deny** World Fuel's *Daubert* motion, albeit **without prejudice**. To the extent the assumptions are questionable, speculative, or lacking in factual support, World Fuel can attack them at trial and ask the jury to disregard them. Moreover, if the evidence at trial turns out to be less certain than McSwain contends, the Court can, upon defense counsel's request, disallow the expert testimony at that time. But at the current pre-trial procedural posture, the Undersigned is reluctant to determine conclusively that the assumptions lack an adequate factual basis.

## I.      Factual Background

McSwain's lawsuit alleges violations of the Uniformed Services Employment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA"). In general, McSwain alleges that World Fuel discriminated, harassed, and retaliated against her because of her military status, military leave, and complaints of discrimination. Her allegations are based on a purported delay of promotion in 2016, a failure to promote in October 2018, a demotion on November 16, 2018, and other purported adverse employment actions.

To further her claim, McSwain retained West, who has a Master of Arts degree in Economics from Washington State University. During the past four years, West has

2

provided expert testimony in 32 cases. Eight of those cases involved trial testimony; and the remainder involved deposition testimony. In 24 of the cases, West provided testimony for the plaintiff. In the remaining eight cases, his testimony was for the defendant. Fourteen of the 32 cases were in federal district court. The rest of the cases were in state court in Idaho, Washington, or (in one instance) Oregon.

McSwain retained West to provide expert opinions about wages and benefits she allegedly lost due to World Fuel's purported USERRA violations, which supposedly delayed her career progression in three ways:

(1)   A delay in being promoted to Manager, HR Compliance & Global Immigration, from an expected date of October 1, 2016, to an actual promotion date of January 1, 2017.

(2)   A failure to be promoted to Director, HR Business Partner, effective October 1, 2018.

(3)   The acceptance of a lower-level Associate Director position with another employer, effective August 31, 2020.

In his Report, West concluded that McSwain's lost wages, benefits and relocation expenses are $260,040. He also concluded that McSwain will incur $219,503 in future lost wages and benefits through June 30, 2021, but World Fuel's motion notes that the parties stipulated to removing this category from West's calculations.

World Fuel's motion[1] asserts several challenges to West's opinions:

---

[1]   World Fuel filed the motion; McSwain responded; and World Fuel filed a Reply. [ECF Nos. 93, 94, 95]. Judge Cooke referred the motion to me for a Report and Recommendations. [ECF No. 97].

First, it says that West did not consider the deposition testimony from any of World Fuel's employees.

Second, World Fuel argues that West incorrectly assumed that McSwain would have received $110,000 ($5,000 per month for 22 months) in spot bonus payments.

Third, World Fuel complains that West took no steps to test or verify the assumptions and information that McSwain provided to him.

Fourth, World Fuel challenges West's assumption that McSwain would have received certain promotions, target bonuses, and merit increases.

Fifth, World Fuel contends that the assumptions are not well-founded because West did not try to compare McSwain with other employees who received promotions.

Sixth, World Fuel further disputes the assumptions used by West because it says he did not analyze tenure, promotion history, time spent in positions, prior experience, and performance of the other employees.

Seventh, World Fuel argues that West's assumptions about spot bonuses are based on an untitled document with no indication of its authenticity or reliability.

Finally, World Fuel argues that West's opinions are not helpful because they are not reliable.

In response, McSwain explains that West is "an exceptionally qualified economics expert" who selected the assumptions he used for his analysis. [ECF No. 94, p. 1]. In addition, she quotes from his deposition, where he testified that the types of assumptions

he used are "used typically for economic analysis of lost wages and benefits." [ECF No. 94, pp. 2; 4]. McSwain argues that most of the cases cited by World Fuel are inapposite. She contends that the challenges to West's opinions go to the weight of his conclusions, not admissibility.

## II.      Applicable Legal Principles

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993). Rule 702, Federal Rules of Evidence, governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)      the testimony is based on sufficient facts or data;
(c)      the testimony is the product of reliable principles and methods; and
(d)      the expert has reliably applied the principles and methods to the facts of the case.

5

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry, including: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact in understanding the evidence or in determining a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996), *aff'd*, 158 F.3d 588 (11th Cir. 1998) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d

at 1292; *see also Quiet Tech. DC–8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire Co.*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *United States. v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prod. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at \*6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at 7 (quoting *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341).

## III.    Analysis

### a.    West's Qualifications

World Fuel does not challenge his qualifications.

### b.    West's Methodology

To be sure, West's conclusions are based on several important assumptions about McSwain's future employment. But that does not, in and of itself, mean that his opinions are not reliable and should be excluded. The Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison*, 184 F.3d at 1312 (internal quotes omitted). Therefore, it is error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341.

"[A] district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness."

8

*Rink*, 400 F.3d at 1293 n.7. With respect to the third reliability criterion of Fed. R. Evid. 702, errors in an expert's application of a reliable method generally implicate credibility rather than reliability. *See Quiet Tech. DC-8, Inc.,* 326 F.3d at 1345-46 (finding that using incorrect numbers in a reliable formula is not grounds for exclusion under *Daubert*).

In its motion, World Fuel cited *Furmanite American, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126 (M.D. Fla. 2007). But the court, in that case, *allowed* the expert opinion testimony of a certified public accountant damages expert. The Court permitted the expert to offer expert opinion testimony in the face of a challenge that the damages calculation incorrectly assumed that an office's income would be constant and further assumed (erroneously) that a multiplier would be appropriate.

The *Furmanite* court held that an opposing expert's challenge was not actually an attack on methodology; it was "more properly characterized as an attack on the values used by [the CPA] within an acceptable methodology." *Id.* at 1132. Significantly, the court cited *Quiet Technology* for the principle that "using incorrect numbers in a reliable formula is not grounds for exclusion under *Daubert*"). At bottom, the court held that the arguments focus on the weight of the expert accountant's conclusions rather than his methodology.

Florida federal courts permit expert opinion testimony on damages even though the opinions are based on assumptions if there is a factual foundation for the assumptions.

When considering an expert's opinion of damages, as here, a district court must keep in mind that "while damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (affirming $18.2 million judgment, explaining that an economist could **assume** that the performance of a REIT index was an appropriate benchmark for gauging lost profits, and holding that trial court did not commit reversible error by allowing an expert economist to testify about lost value damages) (quoting *G.M. Brod. & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1539 (11th Cir. 1985)). "The proof may be indirect and it **may include estimates based on assumptions**, so long as the assumptions rest on adequate data." *Lehrman v. Gulf Oil. Corp.*, 500 F.2d 659, 668 (5th Cir. 1974) (emphasis supplied).

So the critical point here is whether West's assumptions rest on a sufficient factual basis, adequately supported by the evidence. West based his assumptions on what McSwain told him and on the exhibit showing bonuses. Because those assumptions appear to have some factual basis, they should not now be excluded. They may, of course, be vigorously attacked at trial during cross-examination. *See e.g., Riani v. Louisville Ladder, Inc.*, No. CIV.A 07-40258-FDS, 2010 WL 2802040, at *7 (D. Mass. July 14, 2010) (granting in part, and denying in part, a motion *in limine* and permitting a damages expert for the plaintiff electrician who fell from an allegedly defective ladder to give expert opinion testimony about lost income even though his opinion was based on assumptions about

the plaintiff's future work and "even though those assumptions may well be unrealistic or even foolish" because "those criticisms go to the weight to be given the testimony, not its admissibility").

Likewise, if the document West relied upon turns out at trial to be inadmissible because of a lack of foundation, or other evidentiary hurdles that McSwain failed to clear, then the Court can at that time entertain a motion to exclude West's expert testimony. To exclude it now would be premature and unnecessarily risky, as the document may be admitted at trial.[2]

### c. Helpfulness of West's Testimony

World Fuel argues that West's expert opinions are not helpful (and therefore not admissible) because they are unreliable, as they are based on unsupported assumptions. But the conclusion of unreliability depends on whether the assumptions are adequately supported. For now, the Undersigned is not concluding that the assumptions are untenable. So, the defense argument of unreliability is not yet ripe because a *final* assessment has not yet been made. For current purposes, the Undersigned rejects the defense's argument of unhelpfulness but will permit World Fuel to raise the point again at trial if the evidence necessary to support the assumptions used by West does not materialize.

---

[2]     McSwain did not address the challenge to the document in her opposition memorandum.

11

IV.     **Conclusion**

The Undersigned **respectfully recommends** that Judge Cooke **deny without prejudice** World Fuel's motion to strike West as an expert or preclude his expert opinion testimony at trial.

V.      **Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations and to which they did not object, except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on May 6, 2021

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record